IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:25-cv-106

| | |
|---|---|
| SANANDA JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUT CAROLINAS LLC; HUT AMERICAN GROUP LLC; and DOES 1 to 25,<br><br>Defendants. | **NATIONWIDE CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff SANANDA JONES ("Plaintiff"), on behalf of herself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1. Sananda Jones, a person with a mobility disability who uses a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants Hut Carolinas LLC, Hut American Group LLC and Does 1 to 25 (collectively, "Defendants"), asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants collectively own, lease, and/or operate at least fifty (50) Pizza Hut restaurants in the state of North Carolina, including one in Fayetteville. Ms. Jones' claims arise from her own experience with excessive sloping

1

conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at seven (7) of Defendants' facilities also finding excessive sloping conditions.

2. Plaintiff asserts that these excessive sloping conditions persist in part because of Defendants' existing but inadequate internal maintenance policies, practices and/or procedures, which fail to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, and/or procedures that Ms. Jones seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Ms. Jones' investigators, she believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that Defendants' existing internal maintenance policies, practices and/or procedures (discussed at ¶¶ 19-22 below) are inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Ms. Jones brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify its existing policies, practices and/or procedures to ensure that its facilities comply with the ADA's implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

6. Consistent with 42 U.S.C. § 12188(a)(2), Ms. Jones seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify its existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

   > Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . Illustrative are various actions

3

in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8. Plaintiff Sananda Jones is, and at all times relevant hereto was, a person with a mobility disability. When Ms. Jones was 11 years old, she contracted Tuberculosis. The disease compromised her spine, and she had to have part of her vertebrae removed (T-4 to T-6). Then, aged 22, Ms. Jones suffered a car accident that further injured her spinal cord. Since then, Ms. Jones has been a full-time wheelchair user. Ms. Jones' primary residence is in Georgia, but she spends several months a year in Fayetteville, North Carolina, living with her sister.

9. Ms. Jones is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant Hut Carolinas LLC, is, and at all relevant times was, a Delaware limited liability company, doing business in the state of North Carolina as the owner, lessee, and/or operator of dozens of Pizza Hut restaurants in this state, including a number in the Eastern District of North Carolina.

11. Defendant Hut American Group LLC, is, and at all relevant times was, a Delaware limited liability company, doing business in the state of North Carolina as the owner, lessee, and/or operator of dozens of Pizza Hut restaurants in this state, including a number in the Eastern District of North Carolina.

12. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to

4

Plaintiff at this time. Ms. Jones will amend this Complaint to assert their true names and capacities when known. She is informed and believes, and thereon asserts, that each of the fictitiously-named Defendants is responsible in some manner for the occurrences asserted in this Complaint.

13. Ms. Jones asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things asserted in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

14. Ms. Jones is further informed and believes, and based thereon asserts that Defendants collectively own, lease, and/or operate approximately fifty (50) Pizza Hut restaurants in the state of North Carolina.

15. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

**Ms. Jones Has Been Denied Full and Equal Access to Defendants' Facilities**

16. Plaintiff visited Defendants' facilities located at 6781 Raeford Road, Fayetteville, North Carolina 28304, in August 2024, where she experienced unnecessary difficulty and risk of physical harm exiting and entering her vehicle and navigating the facilities due to the unlawful sloping conditions in Defendants'

5

Case 5:25-cv-00106-BO-RJ    Document 1    Filed 02/25/25    Page 5 of 15

purportedly accessible parking areas. Specifically, the parking facilities featured excessive sloping conditions which violated federal regulations, as set forth in more detail below.

17. Despite the inaccessible conditions present at Defendants' facilities, Plaintiff plans to return to Defendants' facilities. Plaintiff often lives with her sister, whose residence is located less than five miles away from Defendants' Raeford Road restaurant. On August 23, 2024, Ms. Jones visited Defendants' facilities on her way home from her sister's work. Ms. Jones and her sister often stop at Defendants' restaurant to pick up food for the family. Because of the close proximity to her sister's house, Ms. Jones intends to frequent Defendants' facility in the future. Furthermore, she intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

18. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and she will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination she has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to Defendants' Facilities**

19. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, and/or procedures with regard to the alteration, maintenance, and operation of their facilities.

20. Plaintiff is informed and believes, and based thereon alleges that, as a Pizza Hut franchisee pursuant to franchise agreements, Defendants utilize an

6

Operations Manual (the "Manual") issued by the franchisor. Exemplars of the franchise agreements are publicly available, and it is Plaintiff's belief that the actual signed franchise agreements between Defendants and Pizza Hut are within the possession and control of the Defendants.

21. Pursuant to the franchise agreements, Defendants are required to follow all of the agreement's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting management, administration, and maintenance policies, practices, and procedures related to exterior maintenance, and in keeping the business "in compliance with all applicable laws, rules, regulations and [its] Brand Standards," including compliance with the ADA and the architectural guidelines promulgated under the ADA. Plaintiff is further informed and believes that, pursuant to the franchise agreements, Defendants are required to remain current with restaurant buildings, parking lots, and landscaped area maintenance and/or asset upgrade obligations. Additionally, Plaintiff is informed and believes and based thereon alleges that the Pizza Hut's franchise agreements require periodic remodeling, redecoration, structural changes, and modifications to the restaurants every fifth to tenth year.

22. Plaintiff is further informed and believes and based thereon alleges that, pursuant to the franchise agreements, Defendants are required to designate a "Qualified Operator" to supervise the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices,

7

or procedures concerning their maintenance obligations, and obligations to maintain, repair, and/or replace features within their Parking Areas, through the Qualified Operators, who supervise Area Coaches, who in turn directly supervise District Managers, and then individual restaurant managers. Plaintiff is informed and believes—based upon the exemplar franchise agreements, Defendants job postings, LinkedIn pages—that collectively, these positions constitute the "Qualified Operator" charged with overseeing operations of Defendants' restaurants for compliance with Pizza Hut's policies through regular and complete inspections of Defendants' restaurants.

23. Defendants' centralized maintenance and operational policies, practices, and/or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

24. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, and/or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

    a. 6781 Raeford Road, Fayetteville, North Carolina, 28304

        i. The purportedly accessible maneuvering clearance area adjacent to the facility entrance had slopes exceeding 2.1%.

    b. 4280 US Highway 15-501, Carthage, North Carolina, 28327

       i. The purportedly accessible curb ramp projected into an access aisle.

  c. 832 West 3rd Street, Pembroke, North Carolina, 28372

       i. The purportedly accessible curb ramp projected into an access aisle.

  d. 84 White Crossing Plaza, Whiteville, North Carolina, 28472

       i. The purportedly accessible curb ramp projected into an access aisle.

  e. 332 North Reilly Road, Fayetteville, North Carolina, 28303

       i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[1].

       ii. The purportedly accessible maneuvering clearance area adjacent to the facility entrance had slopes exceeding 2.1%.

  f. 4711 Ramsey Street, Fayetteville, North Carolina, 28311

       i. The purportedly accessible curb ramp projected into an access aisle.

       ii. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

  g. 1549 North Main Street, Lillington, North Carolina, 27546

       i. The purportedly accessible maneuvering clearance area adjacent to the facility entrance had slopes exceeding 2.1%.

25. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices, and/or procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

---

[1] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

## JURISDICTION AND VENUE

26. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

27. Ms. Jones' claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

28. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

29. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of herself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas of any HUT CAROLINAS LLC, HUT AMERICAN GROUP LLC; and DOES 1 to 25 locations.

30. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

31. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

32. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

33. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and she has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

34. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

**<u>SUBSTANTIVE VIOLATION</u>**
**VIOLATION OF THE ADA, TITLE III**
**[42 U.S.C. §§ 12101, *et seq*.]**
**(Against all Defendants)**

35. Plaintiff restates each and every assertion set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

36. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of mobility. Accordingly, she is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

37. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

38. Plaintiff is informed and believes, and based thereon asserts, that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

39. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

40. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that after were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

41. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

42. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its

12

existing policies, practices and/or procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

43. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Ms. Jones.

44. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

45. Remediation of Defendants' facilities is readily achievable and can be accomplished and carried out without significant difficulty or expense due to the straightforward nature of the necessary modifications. The necessary modifications are low cost and Defendants have the financial resources to complete them.

46. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes her statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

### PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, prays for:

    a.    A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing her counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: February 25, 2025

**EVERETT GASKINS HANCOCK TUTTLE HASH LLP**

/s/ E.D. Gaskins, Jr.
E.D. Gaskins
N.C. Bar No. 1606
220 Fayetteville Street
Suite 300
Raleigh, NC 27601
Phone: 919-755-0025
Facsimile: 919-755-0009
ed@eghlaw.com

*Local Civil Rule 83.1(d) Attorney for Sananda Jones*

**NYE, STIRLING, HALE, MILLER & SWEET, LLP**

Jordan T. Porter
C.A. Bar No. 2501120
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com

**NYE, STIRLING, HALE, MILLER & SWEET, LLP**

Benjamin J. Sweet
P.A. Bar No. 87338
101 Pennsylvania Boulevard, Suite 2
Pittsburgh, PA 15228
Phone: 412-857-5352
ben@nshmlaw.com

*Attorneys for Plaintiff and the Class*